0900

Mary K. GREGORY, Respondent v. Gerald D. GREGORY, Appellant
(358 S. E. (2d) 144)

Court of Appeals

*Victoria L. Eslinger,* of *Berry, Dunbar, Jordan and Eslinger,* and *Ronald M. Childress* of *Childress & Mille,* Columbia, *for appellant.*

*Kermit S. King* and *Carolyn Shuler Holstein,* of *King & Cobb,* Columbia, *for respondent.*

Heard Jan. 20, 1987.

Decided March 16, 1987.

GARDNER, Judge:

Two post-divorce petitions by Gerald D. Gregory (the husband) against his former wife, Mary K. Gregory (the wife) were dismissed by the trial judge. We affirm.

The parties were divorced on April 7, 1984; the divorce approved and merged into its order an oral agreement between the parties. No written agreement was presented to the court, however, the attorneys for the parties (the husband was not present at the hearing) announced to the court that the parties had settled all issues with the exception of the divorce and requested that the court merge into its order the oral agreement which the husband's attorney read into the record. The agreement provided for child custody, child support, a reservation of alimony to the wife and a division of the parties' specific real and personal property. The record discloses that the wife understood the agreement.

About a month after the divorce decree was issued, the husband retired from the Central Intelligence Agency (the C.I.A.). The Central Intelligence Agency Spouses' Retirement Equity Act of 1982[1] (C.I.A.S.R.E.A.) provides, *inter alia,* that under certain conditions (which conditions were met in this case) a former spouse of a C.I.A. employee, upon his retirement, is "entitled to an annuity," provided the same has not been proscribed by a valid divorce decree or a court-approved agreement.

Upon the husband's retirement about a month after the divorce decree was entered, the statute became operational as to his and his wife's annuity. The benefits of the husband were reduced by approximately $550 per month (of this

[1] Pub. L. No. 97-269, 96 Stat. 1142, 1145 [codified at 50 U.S.C. Sections 403 note, 403n (1982].

figure the wife receives directly approximately $400 per month and approximately $150 per month is applied to the premium on the wife's survivor annunity policy.)

On September 20, 1984, approximately a month and a half after the divorce decree, the husband filed a petition in which he alleged that he became aware of the pertinent statute only after the divorce hearing and decree and prayed for an order declaring that the wife had no entitlement to the annuity provided by the C.I.A.S.R.E.A. The husband subsequently filed an amended petition on November 30, 1984, wherein he requested that the lower court modify its decree or issue its order holding that the wife was not entitled to any of the husband's lifetime pension or any survivor benefits. The wife responded by answer and counterclaim on November 30, 1984, and amended answer and counterclaim on November 28, 1984, denying the husband's entitlement to the relief sought and asking, *inter alia,* for attorney fees.

The wife then filed a motion to dismiss on the grounds that she had known about the federal statute prior to the hearing and that any mistake was unilateral and also interposed the defense of *res judicata* as precluding the trial court from modifying its order or from ruling on the issue of entitlement to any portion of the husband's annuity.

The appealed order of August 9, 1985, granted the wife's motion to dismiss on the grounds that the relief sought by the husband was barred by the doctrine of *res judicata.*

On appeal the husband argues that the trial judge erred (1) in dismissing the husband's petition without a hearing on the merits, (2) in applying the doctrine of *res judicata* to preclude the husband from litigating an issue reserved for later determination and (3) in applying the doctrine of *res judicata* to preclude the husband's argument that the prior judgment was obtained by fraud.

While the first argument is not properly preserved for appeal, we briefly address it. The husband's petitions are patently untenable. He first alleges that he was ignorant of an existing law pertaining to his own retirement. It is a fundamental principle of law that everyone is charged with or deemed to have knowledge of the law. The legal axiom that ignorance of the law is no excuse has long

been the law of this nation and state. 31A C.J.S. *Evidence* Section 132(1) (1980); *Benn v. Camel City Coach Co.*, 162 S. C. 44, 160 S. E. 135 (1931). The husband's position that he was ignorant of the law is on its face untenable and the trial court in dismissing the husband's petition so held.

The appealed order then cites language from *Wold v. Funderburg*, 250 S. C. 205, 157 S. E. (2d) 180 (1967) and *Eichman v. Eichman*, 285 S. C. 378, 329 S. E. (2d) 764 (1985) and holds that the husband was barred from raising any issues which were adjudicated in the former suit and *any issues which might have been raised in the former suit.* The trial judge noted that the federal act was in existence at the time of the divorce hearing and on the date of the divorce and that the husband was charged with the knowledge of these provisions; this holding cannot be contradicted. The trial judge then ruled that the issue of the annuity provided for former spouses of C.I.A. employees could have been raised by the husband in the divorce case and summarily dismissed the husband's petitions.

■ We hold that the wife's motion to dismiss was properly granted without a rehearing of the issues involved in the divorce case. South Carolina Family Court Rule 12 provides that all pleadings shall be liberally construed. Rule 81, S.C.R.C.P., provides that the rules of civil procedure for the Court of Common Pleas shall apply to the family courts to the extent the civil rules are not inconsistent with the statutes and rules governing the family court. Rule 12(c), S.C.R.C.P., provides for motions to dismiss based upon the pleadings. With these rules in mind, we hold that the wife's motion to dismiss in this case was properly considered by the trial court; it was in effect a motion for judgment on the pleadings and we so hold.

The husband's next argument is that alimony cannot be barred by the doctrine of *res judicata.* The C.I.A.S.R.E.A. provides that prior to the retirement of a C.I.A. employee, state courts can preclude a former wife from receiving an annuity upon the retirement of her C.I.A. employed husband. But, as held by the trial judge in this case, the issue was not presented in the divorce case and the former wife was not precluded by the divorce decree from the annuity provided for her by the C.I.A.S.R.E.A. upon her husband's retirement after the divorce decree was filed.

The legislative history of the C.I.A.S.R.E.A. reflects that Congress enacted the statute pertaining to spouses of C.I.A. employees because they have to follow their spouses over the world and because of the nature of C.I.A. work, the spouses of C.I.A. employees are unable to work and to develop careers of their own. H. R. Rep. No. 486, 97th Cong., pp. 7-8 (1982), *reprinted in* 1982 Code Cong. and Ad. News 2396, 2397, 2398.

In the case of *McCarty v. McCarty*, 453 U. S. 210, 453 S. Ct. 208 at 230, 69 L. E. (2d) 589, (1981), the U. S. Supreme Court had this to say by way of dicta:

> In an even more extreme recent step, Congress amended the foreign service retirement legislation to provide that as a matter of federal law, an ex-spouse is entitled to a pro rata share of foreign service retirement benefits. Thus, the civil service amendment requires the United States to recognize the community property division of civil service retirement benefits by state courts, *while the foreign service amendments establish a limited federal community property concept.*

With the above in mind, we hold that neither the trial court nor this court has authority to preempt the annuity rights vested in the wife by the C.I.A.S.R.E.A. and we so hold. The annuity of the former spouse is a property right vested in her by federal statute and not alimony and we so hold.

We note parenthetically that the husband has not alleged or argued grounds pursuant to Rule 60, S.C.R.C.P., to be relieved from a prior unappealed order.

The husband next argues that the judgement should have been opened because of fraud; this argument is patently without merit. His argument is that the wife knew of the C.I.A. retirement benefits which might in the event of his retirement be paid to her and did not reveal this to the court; even if it were fraud (and it is not), it would be intrinsic fraud, which cannot be the basis of opening an unappealed decree or judgment. *See Wold v. Funderburg, supra;* 49 C.J.S. *Judgments* Section 434(a) (1974).

At the time of the hearing and before the divorce decree, the wife's right to an annuity under the C.I.A.S.R.E.A. was not vested; it became vested upon the husband's retirement.

The husband is presumed by law to have known of this unvested right and will now not be heard to complain of lack of knowledge of C.I.A.S.R.E.A.

And finally the husband takes the meritless position that the divorce decree was entered by mistake. This argument is, in effect, the same as the husband's complaint that he was ignorant of the C.I.A.S.R.E.A. The argument has no merit and we so hold.

For the reasons stated, the appealed order is affirmed.

Affirmed.

SHAW and BELL, JJ., concur.